**UNITED STATES**

v.

**Jerome T. BLAND.**

**Crim. No. 697–71.**

United States District Court,
District of Columbia.

July 28, 1971.

James E. Sharp, Gregory C. Brady, Asst. U. S. Attys., Donald S. Smith and Thomas A. Flannery, Washington, D. C., for the United States.

Peter R. Kolker, Washington, D. C., for defendant.

MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

The defendant, Jerome T. Bland, is charged with armed robbery of a post office and related offenses, alleged to have occurred on February 8, 1971, at a time when he was sixteen years old. Defense counsel has moved to dismiss the indictment in this case for lack of jurisdiction over this sixteen-year-old defendant contending that the statutory basis for charging this defendant as an adult, D.C.Code § 16–2301(3) (A) (Supp. IV, 1971), fails to afford the defendant due process of law as required by the Constitution. The Government responds that the decision to prosecute this defendant is within the unreviewable discretion of the prosecutor.

The specific statute setting up the Family Division of the new Superior Court provides:

§ 16–2301. DEFINITIONS

As used in this subchapter—

\* \* \* \* \* \*

(3) The term "child" means an individual who is under 18 years of age, except that the term "child" does not include an individual who is sixteen years of age or older and—

(A) charged by the United States attorney with (i) murder, forcible rape, burglary in the first degree, robbery while armed, or assault with intent to commit any such offense, or (ii) an offense listed in clause (i) and any other offense properly joinable with such an offense.

It is effective as of February 1, 1971, as part of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 473.

Had this sixteen-year-old been arrested for this offense prior to February 1, 1971, he would have received the full panoply of protections of the District of Columbia Juvenile Court system, and that system could have waived jurisdiction resulting in his trial as an adult only after

a hearing with effective assistance of counsel and a statement of reasons specific enough to permit this Court to review the decision to waive jurisdiction. *See* Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

This new statute now permits the United States Attorney to make the decision as to whether or not certain sixteen- and seventeen-year-olds will be tried as adults in criminal court or treated as children in the Family Division of the new Superior Court, unfettered by the requirements of a "full investigation," a waiver hearing and statement of reasons, consistent with due process.

By its ruling today, this Court is not trespassing on the prosecutorial discretion of the United States Attorney as to whether or how Jerome T. Bland should be charged nor is it expressing any opinion as to the merits of whether Jerome T. Bland should be tried as an adult or treated as a child by the Family Division. This Court is ruling on the validity of an Act of Congress, which Act purports to lower the jurisdictional age limit for juvenile treatment of those arrested for certain serious crimes but in actuality streamlines the juvenile system at the expense of the individual's right to due process safeguards by placing unlimited discretion in the hands of the United States Attorney on a matter of "critical importance." *Kent, supra* at 556, 86 S. Ct. 1045.

Congress, faced with statistics [1] indicating that the existing Juvenile Court system was not working well, took on the task of reorganizing that system. Two of the problems of the then existing system that Congress intended to remedy with the provision challenged here were that the Juvenile Court was overburdened with too many juveniles in difficulty with the law and there were too many sophisticated sixteen- and seventeen-year-olds who were still being treated as juveniles, thereby wasting the efforts of the Juvenile Court because they were beyond juvenile rehabilitation and were influencing those children in the Juvenile Court that might still be helped if removed from that influence.

Upon consideration of these problems and those statistics indicating greater incidence of serious crimes committed by juveniles aged sixteen to eighteen, the Senate District Committee rejected the simple reaction of lowering to sixteen the jurisdictional age limit for the proposed Family Division.[2] That Committee also rejected the proposal of the Justice Department but that proposal, with only a change in the specified offenses, ultimately became the law. The Justice Department Staff Memorandum recommended against the eighteen year old age limit set out in the Uniform Juvenile Court Act [3] and the HEW Guide,[4] two documents upon which most of the Family Division legislation was based. The Justice Department position was that:

> neither the Uniform Act, HEW Guide or State law is a wholly valid precedent for the District of Columbia. Of all the jurisdictions to which these precedents might apply only the District is a wholly urban jurisdiction where all the youths involved may be considered against an urban background. Consequently, this definition of child was drafted, not with reference to other laws, but with specific reference to the problems of the District as seen in its Juvenile Court.

The jurisdictional age for all juveniles was not lowered to 16 because there are still first offenders charged with minor offenses who may benefit from juvenile treatment up to the age of 18, and treating them as adults may be harsh and unnecessary. At the same time, experience has shown that

---

1. *See, e. g.*, Senate Comm. on the District of Columbia, District of Columbia Juvenile Code, S.Rep.No.91–620, 91st Cong., 1st Sess. 2–3 (1969) [hereinafter cited as S.Rep.No.91–620].

2. *Id.* at 8.

3. Uniform Juvenile Court Act § 2(1).

4. U. S. Dept. of Health, Education and Welfare, Legislative Guide for Drafting Family and Juvenile Court Acts § 2(a) (1969).

in certain crime categories, juvenile treatment is unworkable. Accordingly, the jurisdictional age has been lowered with respect to these crimes.[5]

The Senate District Committee, however, "did not take so dim a view of juveniles in the sixteen- to eighteen-year-old group generally as to presume sophistication in every case involving serious misconduct. * * * "[6] It therefore proposed its amendment that excepted from the jurisdictional definition of "child" not just the juvenile involved in one of the enumerated grave offenses, but, in addition, before such a young person could be excluded from the Family Division it would have to be ascertained that such person had "previously had the benefit of special juvenile disposition after being charged with serious misconduct committed after attaining the age of 15." [7]

The House District Committee reported its bill this way:

Because of the great increase in the number of serious felonies committed by juveniles and because of the substantial difficulties in transferring juvenile offenders charged with serious felonies to the jurisdiction of the adult court under present law, [those "difficulties" being the requirement set by the Supreme Court that a hearing on this "critically important" action determining important statutory rights of the juvenile, must measure up to the essentials of due process and fair treatment, Kent v. United States, 383 U.S. 541, 556, 562 [86 S.Ct. 1045, 16 L.Ed.2d 84] (1966)] provisions are made in this subchapter for a better mechanism for separation of a violent youthful offender and recidivist from the rest of the juvenile community.

Present law provides that a child age 16 and older who is charged with a felony may be transferred to adult court. Under the definitions in this bill, a person, 16 years of age or older, who is charged by the United States Attorney with an enumerated violent crime is automatically subject to the jurisdiction of the adult court. However, if the United States Attorney declines to prosecute for the felony, the arresting officer will take such action as necessary to place the case within the jurisdiction of the Family Division. The case may not thereafter be transferred to the Criminal Division for adult treatment.

The pending bill, in providing for transfer for criminal prosecution (16–2307), sets the age at which a child charged with a felony may be transferred from the Family Division to the Criminal Division at age 15 rather than at age 16 under present law. *But the procedural safeguards in the proposed bill are such as to insure that those children who can be rehabilitated in the facilities available for care and treatment of child offenders will not be transferred to the Criminal Division for prosecution.* [Emphasis added.][8]

The above leaves no doubt that the House of Representatives intended to remove from the reorganized juvenile system those who were beyond the help of juvenile treatment, but generally with procedural safeguards to insure the validity of such a determination.[9] Succumbing to the pressures generated by

---

5. Dept. of Justice Staff Memorandum on Proposed Code of Juvenile Procedure for the District of Columbia (S. 2981) (1969), printed in "Crime in the National Capital," Hearings Before the Committee on the District of Columbia, United States Senate on S. 2981, Juvenile Court Proceedings, 91st Cong., 1st Sess., pt. 7, at 1816 (1969).

6. S.Rep.No.91–620 at 9.

7. *Id.* at 8.

8. H.R.Rep.No.91–907, 91st Cong., 2d Sess., 50 (1970) [hereinafter cited as H.R.Rep. No.91–907].

9. That provision under the new Act which provides those procedural safeguards which would most likely meet the requirements of Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), is D.C.Code § 16–2307 (Supp. IV, 1971). It sets forth the procedure for transferring a juvenile from the Family Division to the Criminal Division, but, unlike its

the growing crime wave, however, it proposed a short-cut method for removing those young people arrested for certain serious crimes.

Making the assumption that one who commits one of the enumerated serious offenses has attained that degree of sophistication that would prevent effective juvenile correctional treatment, the House of Representatives (and eventually the entire Congress) then made an assumption contrary to the basic presumption of innocence in our system of jurisprudence.[10] They presumed that anyone arrested for a crime has committed that crime and, because of the seriousness of the crime charged, is therefore a matured criminal. The dissenters from the House District Committee's report, Congressmen Diggs, Fraser and Adams, had clearly enunciated this infirmity: "The charge, as determined by the prosecutor alone, will determine his treatment as an adult, a clear repudiation of the presumption of innocence principle." [11]

The legislative history of the Act demonstrates that Congress wanted to create a streamlined *parens patriae* system for juveniles in the District of Columbia with a means for eliminating those who were beyond its help. The Senate wanted at least the slight additional standard of prior juvenile disposition. The House of Representatives wanted only the standard that a juvenile be charged with a certain serious offense. Both sides compromised. The Senate was willing to eliminate the requirement of prior juvenile disposition and the House was willing to reduce the number of enumerated serious offenses,[12] and the Congress was

willing to assume that, if the police charged a youth with one of those enumerated offenses, he must have committed that offense and is therefore so sophisticated that he should be withdrawn from the system. This violation of the basic presumption of innocence is contrary to due process.

Further, even if this were not so, the Congress did not set any standard in the statute. Instead of doing what it intended, ridding the system of mature, sophisticated sixteen- and seventeen-year-olds by lowering the jurisdictional age limits for certain offenses, Congress created a statute which provides a system of *parens patriae* treatment for all under age eighteen except those whom the United States Attorney might arbitrarily exclude. The protections of the Family Division can automatically be denied certain sixteen- and seventeen-year-old children without any opportunity for a hearing or even the slightest inquiry into that with which the Congress was concerned, namely, could the child be helped by the Family Division. *Kent* called this waiver decision "critically important" and required a hearing that would measure up to fair treatment and due process; and regardless of whether one terms it a "transfer," an exercise of prosecutorial discretion under the operation of the statute, or a "waiver," the consequences are the same, *i. e.*, the child is excluded from the protection of the system.

As indicated by the legislative history, Congress intended that there be retained a juvenile system wherein the District of Columbia, acting as *parens patriae*, could try to help and try to rehabilitate

predecessor, the old waiver provision, the new provision bases transfer solely on the inappropriateness of juvenile correctional treatment. *See* D.C.Code § 16–2307(d) and (e) (Supp. IV, 1971) and Statement of the Managers on the Part of the Senate Submitted Regarding the Conference Action Upon S. 2601, The President's Crime Legislation for the District of Columbia, 91st Cong., 2d Sess. 21 (Comm. Print 1970) [hereinafter cited as Senate Manager's Statement]. Note these safeguards can be arbitrarily denied any 16-

or 17-year-old arrested for one of those offenses enumerated in the section challenged in this case.

10. Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895).

11. H.R.Rep.No.91–907 at 208.

12. Senate Manager's Statement at 4, 19; Statement of the Managers on the Part of the House, printed in District of Columbia Court Reform and Criminal Procedure Act of 1970, Conference Report 219, 226 (1970).

people under age eighteen if there remained any potential in these people. Congress created a system of rights and protection for those under eighteen but a system where some could be denied that assistance and those protections arbitrarily with no assurance that they were being excluded for the reasons intended by Congress. Therefore, this section of that statute is invalid as violative of basic due process.

In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court ruled that a state could not cut off welfare funds without adequate notice and a prior hearing at which the welfare recipient could have the assistance of counsel, with the decision maker stating his reasons and indicating the evidence upon which he relied for his decision. Applying *Goldberg*, the United States Court of Appeals for the District of Columbia Circuit in Jones v. Robinson, 440 F.2d 249 (1971), ruled that a patient, who was being transferred to the maximum security section of Saint Elizabeth's Hospital because he had been accused of a crime, must "be afforded elemental due process 'tailored to the capacities and circumstances of those who are to be heard,'" 440 F.2d at 250, quoting from *Goldberg*, 397 U.S. at 268–269, 90 S.Ct. 1011. The District of Columbia Circuit held that "because of the consequences of that decision [to place the patient in a maximum security section] to patients like appellant, some minimal degree of due process is required in order to make as certain as the hospital authorities reasonably can the correctness of their decision." 440 F.2d at 251.

Without a doubt, the consequences of a sixteen-year-old defendant being tried as an adult rather than being treated as a "child" are more severe than a welfare cut-off or a transfer within a mental institution. In the instant case, for example, it may mean the difference between life imprisonment and five years. That stage in any proceedings when this adult-or-child decision is made is as "critically important" whether the decision is made by the Family Division or

by the United States Attorney. "[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without a hearing, without effective assistance of counsel, without a statement of reasons." Kent v. United States, 383 U.S. 541, 554, 86 S.Ct. 1045, 1053, 16 L.Ed.2d 84 (1966).

Surely nothing less can be expected under a new Congressional statute for the nation's capital. The determination that a child should be tried as an adult cannot be made without the safeguard of basic due process. Without a provision in the new statute that would require some determination, reached after a fair hearing, that an individual is beyond the help of the Family Division, that statute must fall as violative of due process.

The Government's memorandum contends that:

Congress has generally defined [the class of individuals over whom the Family Division is to have jurisdiction] as meaning an individual who is under eighteen years of age *except* those individuals who are at least sixteen years of age and charged with specifically enumerated crimes by the United States Attorney. Thus, any individual who does not meet these specific qualifications is not subject to the jurisdiction of the Family Division of the Superior Court and will be tried as an adult in the appropriate criminal court within the District of Columbia."

Opposition to the Defendant's Motion to Dismiss the Indictment at 2. But this is not the case in actuality. Congress has not set specific qualifications. Instead it has provided for an arbitrary transfer of sixteen- and seventeen-year-olds based only upon the United States Attorney's unfettered discretion. The statute in question does not assure that every sixteen- or seventeen-year-old arrested for one of the enumerated offenses will be tried in an appropriate criminal court. As it stands, the statute allows for Family Division treatment or adult

criminal trial with no absolute requirement of one or the other.[13]

This statute does not operate automatically. Congress, despite its intentions, has not made disposition of all the enumerated offenses non-juvenile without exception, nor has it excluded all hardened criminals from this new juvenile system; rather, Congress has left the method for disposition of the enumerated offenses up to the unbridled discretion of the United States Attorney. This is completely inconsistent with the Congressional intent and due process of law.

This Court, then, is not interfering with prosecutorial discretion but rather is ruling that a statute which creates a class of protected people and excepts from that protection an amorphous group of people in such a way that a person can be denied the statutory protection for the class to which he belongs, not by an Act of Congress, but by what can be completely arbitrary action of the United States Attorney is invalid. This lack of any standard as to which individuals should be so charged so as to exclude them from the protection of the Family Division is a denial of due process as to those individuals and cannot stand.

Because that section of the District of Columbia Code which authorizes the exclusion of Jerome T. Bland from the Family Division of the Superior Court is invalid as violative of due process of law, this Court is without jurisdiction over this sixteen-year-old until such time as a proper determination has been made as to the reasonable prospects of rehabilitating this child before his majority in compliance with the transfer provisions of D.C.Code § 16–2307 (Supp. IV, 1971). It is, therefore, by the Court this 28th day of July, 1971,

Ordered, that the indictment against Jerome T. Bland in this case be and hereby is dismissed.

13. This is made very clear by the legislative history: "However, if the United States Attorney declines to prosecute for the felony, the arresting officer will take such action as necessary to place the case within the jurisdiction of the Family Division." H.R.Rep.No.91–907 at 50. See also, S.Rep.No.91–620 at 15.