FILED
Clerk
District Court

APR 13 1987

For The Northern Mariana Islands
By_____
(Deputy Clerk)

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

COMMONWEALTH OF THE NORTHERN     )     DCA NO. 85-9009
MARIANA ISLANDS,                 )
                                 )     CTC NO. 84-96
          Plaintiff-Appellee,    )
                                 )
               vs.               )     OPINION
                                 )
DIEGO S. CABRERA,                )
                                 )
          Defendant-Appellant.   )
_____)

     Attorneys for Appellee:        ALEXANDRO C. CASTRO
                                    Attorney General
                                    S. JANE HAGGERTY
                                    Ass't. Attorney General
                                    CNMI Office of the
                                       Attorney General
                                    5th Floor, Nauru Bldg.
                                    Saipan, CM 96950

     Attorney for Appellant:        JAMES S. SIROK
                                    Attorney-at-Law
                                    3rd Floor, Nauru Bldg.
                                    Saipan, CM 96950

BEFORE: LAURETA and KELLER*, District Judges, and MUNSON**

MUNSON, Judge:

_____

 * The Honorable William D. Keller, United States District Judge,
Central District of California, sitting by designation.

** The Honorable Alex R. Munson, Chief Justice, Trust Territory
High Court, sitting pursuant to 48 U.S.C. §1694b.

## PROCEDURAL HISTORY

Defendant-appellant was arrested for murder on November 16, 1984. A complaint of delinquency was filed against him November 21, 1984. The complaint was dismissed December 3rd and he was charged as an adult with first degree murder on December 18, 1984, with two co-defendants. Appellant was convicted by a Commonwealth Trial Court jury of second degree murder on March 8, 1985. On May 22, 1985, he was sentenced to twenty years imprisonment and he filed his notice of appeal shortly thereafter.

## FACTS

Herman Flores Fitial was murdered November 11, 1984, in the Marpi area of Saipan. On November 16, 1984, appellant was arrested and taken to the police station for questioning. Because of appellant's minority a juvenile officer was called to conduct the initial interview. However, the officer first went to appellant's house and advised his father of the arrest. The father accompanied the officer to the jail and was allowed to speak to his son. Prior to being questioned appellant was advised of his rights in both Chamorro and English and he signed a "constitutional rights" form. He then confessed orally and in writing to his role in the murder.

The next day appellant again was advised of his rights, again signed a "constitutional rights" form, and again confessed orally and in writing. Appellant's father was present the second day during the latter half of his confession.

A complaint of delinquency was filed against appellant on November 21, 1984. The complaint was dismissed December 3, 1984, on the ground that Title 6 of the Commonwealth Code (C.M.C.) §5102 required that appellant be certified automatically as an adult. Appellant was ordered to stand trial as an adult in accordance with 6 C.M.C. §5103(a) and was charged with first degree murder. On December 18, 1984, the criminal information was amended to include two co-defendants.

On January 22, 1985, appellant moved to suppress the statements he made on November 16 and 17, 1984. Two grounds were alleged: First, that he did not waive his rights to remain silent and to have assistance of counsel and, second, that if he did waive his rights, it was not done knowingly, intelligently, and voluntarily. A hearing on the motion was held January 30, 1985. Written findings denying the motion were issued February 22, 1985.

Trial began March 4, 1985, and the jury convicted appellant of second degree murder on March 8, 1985. He was sentenced May 22, 1985, to twenty years imprisonment and is presently free and attending school pending appeal.

## ISSUES

1.  Whether the provision of 6 C.M.C. §5103(a) which automatically certifies as an adult a juvenile between the ages of sixteen and eighteen accused of specified offenses is constitutional.

2.  Whether there is an ambiguity between 6

C.M.C §§5102 and 5103(a) and, if so, if it is of such dimension as to render them both unconstitutional.

3. Whether appellant's two pre-trial confessions were properly ruled admissible.

4. Whether appellant made an effective waiver of his rights.

5. Whether appellant's statements were involuntary because they were obtained by coercion.

## DISCUSSION

1. Whether the provision of 6 C.M.C. §5103(a) which automatically certifies as an adult a juvenile between the ages of sixteen and eighteen accused of specified offenses is constitutional.

Appellant argues that the due process provisions of both the U.S. Constitution and its CNMI counterpart, together with Article I, §4(j) of the CNMI Constitution [1], require that a person under the age of eighteen be treated initially as a juvenile. Such treatment should continue unless the juvenile court determines after a preliminary hearing that one of the three types of offenses specified in 6 C.M.C. §5103(a)--- murder, rape, or a traffic offense--- has been committed.

_____

[1] "§4(j) Persons who are under eighteen years of age shall be protected in criminal judicial proceedings and in conditions of imprisonment."

1097

Title 6 C.M.C. §5103 states in part that a "delinquent child" includes any juvenile:

> (a) Who violates any Commonwealth law, ordinance, or regulation while under the age of 18; provided that a juvenile 16 years of age or older accused of a traffic offense, murder, or rape shall be treated in the same manner as an adult.

The power to enact laws is vested in the CNMI Legislature. Constitution of the Commonwealth of the Northern Mariana Islands, Art. II, §1. A legislative classification is entitled to a strong presumption of validity and may be set aside only if no ground can be conceived to justify it. United States v. Bland, 472 F.2d 1329, 1334 (D.C. 1972); cert. denied, 412 U.S. 909 (1973). The meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that meaning is clear, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms. Caminetti v. United States, 242 U.S. 470, 485 (1917). Bland, supra, is useful because it involved a statute defining "child" so as not to include juveniles sixteen years of age and older who were accused of specified offenses. The court held the statute constitutional, ruling it was neither an arbitrary legislative classification nor a negation of the presumption of innocence. Here, the legislative intent can be justified on the ground that it removes from the juvenile adjudicative process those accused of severe offenses which place them beyond the

rehabilitative capacity of the system. Bland also disposes of appellant's contention that being charged as an adult deprived him of the presumption of innocence. To try a juvenile as an adult is not a judgment of guilt or imposition of a penalty; the prosecution must still prove guilt beyond a reasonable doubt. Bland, at 1338.

Treatment as a juvenile is not an inherent right. Woodward v. Wainwright, 556 F.2d 781, 785 (5th Cir. 1977). It is a right created by the legislature and may be restricted in any way not arbitrary or discriminatory. Id. A legislature may determine that the juvenile system is ill-suited for certain youths and that they pose a greater threat to society than can be coped with by the juvenile system. Id. The CNMI statute can be upheld using the identical rationale.

Article I, §4 of the Commonwealth Constitution does not provide the support appellant claims. The protection provided juveniles in criminal proceedings centers on shielding them from the harsh glare of publicity, helping them to avoid the life-long stigma of a criminal record, minimizing their contact with adult criminals, and rehabilitation. Analysis of the Constitution of the Commonwealth of the Northern Mariana Islands (1976), pp. 19-20. Specifically, appellant's situation was expressly contemplated:

> This section does not prevent the legislature from directing that certain offenders who are under the age of 18 may be tried as adults in specified circumstances.

Id., at p. 20.

Accordingly, we find that Title 6 C.M.C. §5103(a) satisfies the language, intent and requirements of Article I, §4(j) of the Commonwealth Constitution.

    2.    Whether there is an ambiguity between 6 C.M.C §§5102 and 5103(a) and, if so, if it is of such dimension as to render them both unconstitutional.

Appellant contends that the automatic certification language of 6 C.M.C §5103(a) is rendered ambiguous by §5102, which states:

    An offender 16 years of age or over may, however, be treated in all respects as an adult if, in the opinion of the Court, his or her physical and mental maturity so justifies.

Appellant does not believe that §5103(a) clearly excepts him from §5102, despite the seeming conclusiveness of the language. He argues that because §5102 implicitly requires a hearing before a juvenile can be tried as an adult, and because §5103(a) does not, there is no clear mandate that a juvenile must be tried as an adult when charged with murder. Too, automatic certification under §5103(a) renders meaningless Article I, §4(j) of the Commonwealth Constitution.

There is no discernible ambiguity between the two sections. The CNMI Legislature mandated automatic certification as an adult for juveniles charged with specified offenses. It then allowed the juvenile court discretion to treat juveniles

charged with other offenses as adults if their maturity warrants it. The requirement of a hearing indeed is implicit in this latter category. Further, it is required by <u>Kent v. United States</u>, 383 U.S. 541 (1966). There, the Court held that a statute requiring a full investigation by the juvenile court before a waiver of its jurisdiction meant an inquiry into the facts, the desirability, and propriety of a juvenile court proceeding in a particular case. <u>Kent</u>, at 553, 562.

Non-discretionary statutes such as §5103(a) have been addressed in the first section above. The distinctions between the two statutes at issue are clear, unequivocal, and constitutional.

> 3. Whether a juvenile defendant must be advised that his or her statements may be used later in an adult proceeding.

Appellant first argues that Article I, §4(j) of the Commonwealth Constitution was violated by allowing into evidence at his trial as an adult the two confessions he made while he was in the juvenile justice system. He urges that the §4(j) mandate that juveniles "be protected in criminal judicial proceedings" prohibits use of the statements when defendant and his parents were not advised by the government that the statements could be used against him in adult proceedings. Further, to allow use of the statements would undermine the integrity and rehabilitative purpose of the juvenile process.

Appellee replies that, absent a Commonwealth

1101

constitutional requirement that a juvenile be informed that he or she may be charged as an adult, appellant is entitled to be informed only of his constitutional rights as per United States v. Miranda, 384 U.S. 436 (1966). Appellee points out that advice of rights was given not once, but twice. Both waiver forms indicated the statements could be used "in court"; there was nothing limiting their use to juvenile proceedings. Furthermore, Article I, §4(j) of the Constitution does not apply here, as revealed in the Analysis of the Constitution, referred to above.

■ There is no requirement, and we do not hold, that a juvenile defendant be apprised, in addition to Miranda rights, that statements made while in the juvenile system may be used against him or her in an adult proceeding.

4. Whether appellant made an effective waiver of his constitutional rights.

■ Appellant argues that both he and his parents were required to be informed of his constitutional rights. Appellant further maintains his rights could not be deemed waived absent an express finding by the trial court that such waiver was made intelligently, knowingly, and voluntarily by both appellant and his parents. Appellant is mistaken as to his rights being extended to his parents. During the pre-judicial stages, there is no constitutional or statutory requirement under the laws of the Commonwealth of the Northern Mariana Islands that a parent be present, be separately advised of the child's constitutional

1102

rights, or participate in the waiver of those rights. The police, exercising an abundance of caution, extended to the father the courtesy of being present while his son was being advised of his Miranda rights. By no means was the father's presence legally required. Still, appellant urges to elevate that courtesy to a legal requirement. With this we cannot agree. As to the second contention, the record shows that the trial court did make an express finding that appellant's waiver satisfied constitutional standards.

Appellant was arrested November 16, 1984, and taken to the police station for questioning. He met briefly with his father before questioning began. His father was present throughout the time appellant was being advised of his rights. The father appeared to understand the rights given to his son. Appellant was advised of his rights in both Chamorro and English and he initialled each of the nine parts of the "constitutional rights" form and then signed the completed form. There is evidence that appellant's father played a major role in his decision to talk about the crime. Lt. Camacho testified that the father told appellant to change from "no" to "yes" his response on the form as to whether he was willing to make a statement. This was done in a "forceful" manner. Appellant then confessed orally and in writing. Appellant was confined overnight and questioned again the next day. Before questioning began he again was advised of his rights and again confessed. Appellant's parents were not notified that a second statement was going to be

taken from defendant; they arrived unexpectedly. Appellant had signed the waiver form already and questioning was about half-completed. His father was present during the latter half of the questioning on the second day. Neither appellant nor his parents ever requested that questioning cease.

At the conclusion of questioning appellant was released without bail to the custody of his parents. Juvenile proceedings were initiated, then dismissed, and adult proceedings began.

A hearing to suppress both confessions was held January 30, 1985. At the hearing, defendant, represented by counsel, demonstrated that he had fully comprehended his rights when they were read to him before he was questioned:

Q. Now, let's start with paragraph 4. You have the right to remain silent, you do not have to talk to me unless you want to do so. Do you understand that?

A. Yes.

Q. Did you understand that?

A. Yeah.

Q. What does it mean?

A. I'm not -- I don't have to talk if I don't want to.

Q. Okay. If you don't want to you don't have to talk, is that what you...?

A. Yeah.

Q. No. 5. Did Sgt. Camacho read everything in English?

A. English and Chamorro.

Q. If you don't want to talk to me, I must

1104

advise you that whatever you say can and will be used as evidence against you in court. Did you understand that?

A.   (Inaudible.)

\* \* \* \*

Q.   Now, did you understand what he meant by that?

A.   Yes.

Q.   What did you understand about it?

A.   If I talk, if I say anything, he can use in court.

\* \* \* \*

Q.   No. 7 -- or No. 6. You have the right to consult with a lawyer and have a lawyer present with you while you are being questioned. You may stop talking to me at anytime and demand a lawyer at anytime. Did you understand that?

A.   Yes.

Q.   And, did he also explain that to you in Chamorro?

A.   Yes.

\* \* \* \*

Q.   No. 7. Did Sgt. Camacho advise you about No. 7? Did he say that if you want a lawyer but are unable to pay for one, a lawyer will be appointed to represent you free of any cost to you. Did you understand that?

A.   Yes.

Q.   And, when you said you understood that you put your initials, D.S.C., and the word, yes?

A. (Inaudible.)

COURT: The defendant has nodded his head in the affirmative as the answer.

Q. No. 8. The service of the public defender or his representative are available for this purpose without charge. Did Sgt. Camacho advise you of that in English and Chamorro?

                    *    *    *    *

A. Yes.

Q. Okay, did you understand that?

A. No.

Q. What didn't you understand about it?

A. Everything.

Q. Now, did you understand that explanation in Chamorro, when he explained it in Chamorro?

A. Yes.

                    *    *    *    *

Q. No. 9. It says, knowing these rights, do you want to talk to me without having a lawyer present? Did you understand that question?

A. Yes.

(Tr., pp. 26-30.)

The motion to suppress was denied.

Appellant relies primarily on Application of Gault, 387 U.S. 1 (1967), to support the proposition that both the juvenile defendant and his or her parents must. be apprised of the juvenile's constitutional rights. Gault involved a fifteen year old juvenile who had been committed to a children's home after a

1106

juvenile court judge found him to be a delinquent child habitually involved in immoral matters within the meaning of the Arizona statute. Gault, at 4-9. The entire course of those proceedings was characterized by informality approaching whim. The U.S. Supreme Court on appeal concerned itself only with problems relating to the "proceedings by which a determination (was) made as to whether a juvenile (was) a delinquent." Gault, at 13. The Court stated that it "was not...concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process." Gault, at 13. This latter statement is particularly important here.

Nevertheless, Gault offers some guidance. Specifically, the court confronted the question of admissions made by a juvenile while in custody. After a prolonged review of the positive and negative aspects of allowing such admissions. the Court cited as "authoritative" Standards for Juvenile and Family Courts:

> Before being interviewed [by the police], the child and his parents should be informed of his right to have legal counsel present and to refuse to answer questions...if he should so decide.

Gault, at 49.

An additional factor favoring this practice was found, and it is similar to appellant's situation:

> [W]hen Gerald Gault was interrogated concerning violation of a section of the Arizona Criminal Code, it could not be certain that the juvenile court judge would decide to "suspend" criminal prosecution in

court for adults by proceeding to an adjudication in juvenile court.

_Gault_, at 51.

■ This Court believes it would be a sounder practice to require that both a child and his or her parents be advised of the child's constitutional rights prior to interrogation.[2] However, it is not necessary to reach that issue and, accordingly, we do not. Here, appellant and his father were both present when the officer first informed appellant of his rights. The officer testified that the father appeared to understand the rights given his son. The father took no steps to stop the questioning. Although _Gault_ does not address pre-judicial occurrences its rationale perhaps should be extended to situations such as encountered here. However, that is the function of the Legislature and not this Court. We do not find that the Constitution as written can be construed so broadly as to allow the interpretation appellant desires.

■ Appellant also contends that his parents were not advised of his rights prior to the second episode of questioning,

_____

[2] Some states require the presence of a parent or other "interested adult" when the child waives his or her constitutional rights. See, e.g., Commonwealth v. McCutchen, 343 A.2d 669 (Pa. 1975); cert. denied, 424 U.S. 934 (1975) and cases following; and, People v. Burton, 6 Cal.3d 375, 99 Cal.Rptr. 1 (1971).

that they were not present during questioning, and that his second confession was far more injurious to his case. The trial court's factual finding that his second confession was a continuance of the first and equally voluntary finds support in the record. As noted earlier, appellant was informed again of his rights and initialled and then signed a multi-question form. As illustrated earlier, the trial court heard testimony and specifically considered defendant's mental capacity and state of mind before ruling the admissions voluntary, intelligent, and knowing. Such a finding of fact is subject to reversal only if it is clearly erroneous. United States v. Doe, 764 F.2d 695, 697 (9th Cir. 1985). We hold that the trial court's finding was not clearly erroneous.

> 5. Whether appellant's statements were involuntary because they were obtained by coercion.

The final issue is whether or not appellant's confessions were voluntary in light of the father's "forceful manner" in telling appellant to change from "no" to "yes" his response indicating whether he wished to make a statement. There was no evidence that the father threatened his son with physical violence or that, indeed, any manner of threat was made.

The prosecution must prove by a preponderance of the evidence that a statement was made voluntarily. Lego v. Twomey, 404 U.S. 477, 490 (1972). Whether or not a confession was obtained by coercion is determined from the totality of

the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973). The same standard applies for juveniles. Fare v. Michael C., 442 U.S. 707, 725 (1979).

Psychological coercion is as unconstitutional as physical coercion. Lynumn v. Illinois, 372 U.S. 528, (1963). Involuntary statements offend the community's sense of fairness and decency and are inadmissible. Rogers v. Richmond, 365 U.S. 534, 540-541 (1961); Blackburn v. Alabama, 361 U.S. 199, 206 (1960). Excluding involuntary statements is intended to curb coercive conduct. Spano v. New York, 360 U.S. 315, 320-321 (1959). The United States Supreme Court has not held that the presence or notification of parents is necessary for a valid confession or that a voluntary and effective waiver is impossible without them. The test is whether, given the totality of the circumstances, the juvenile's confession was voluntary. Gallegos v. Colorado, 370 U.S. 49, 55 (1962). Among the circumstances considered are: 1) the age of the minor; 2) the length of the questioning; 3) the youth's education; 4) the prior experience of the youth with the police; and, 5) the presence and/or notification of the juvenile's parents.

Here, appellant was seventeen years three months old at the time he was questioned. The length of the questioning was not stressed by either party and there is no indication it was excessive. Defendant waived his rights before questioning began. Defendant was in the 10th grade at the time he was questioned. There is no indication that he had previously had experience with

1110

the police. When defendant was taken in he was told he was under arrest for murder. He was allowed to talk to his father prior to being questioned and he was advised of all his rights in the presence of his father on November 16, 1984. He was advised of his rights again the next day. Appellant clearly understood his rights, as demonstrated by his responses to questions at the suppression hearing. He twice signed a constitutional rights form. He testified he had not been forced by anyone to talk or give a written statement.

From the totality of the circumstances it cannot be said that appellant's statements were coerced or involuntary. The authorities appear to have been scrupulous in their dealings with appellant. Although the father's role was perhaps unfortunate and no doubt derived from a heartfelt belief that his son could not be guilty of so heinous a crime, there is no support in the law for a finding that the father's comments amounted to coercion.

For the reasons stated above, the judgment of the trial court is AFFIRMED.

JUDGE ALEX R. MUNSON

JUDGE ALFRED LAURETA

JUDGE WILLIAM D. KELLER